**In the Interest of W.E.G., A Child, Appellant.**

**No. 83–519.**

Court of Appeals of Iowa.

Oct. 25, 1983.

Beth H. Trout of Mowry, Irvine, Brooks & Ward, Marshalltown, for appellant juvenile.

Thomas J. Miller, Atty. Gen., and Brent Hege, Asst. Atty. Gen., for appellee State.

Heard by OXBERGER, C.J., and SNELL and HAYDEN, JJ.

OXBERGER, Chief Judge.

A juvenile was adjudicated to be delinquent; at a dispositional hearing he was placed in foster care, but at a later review hearing the disposition was modified and the juvenile was placed at the Training School for Boys. The juvenile has appeal-

ed. He contends the evidence did not support placement at the training school; he also contends the placement was invalid because he had been given defective notice of the date of the review hearing and no prior notice of the conditions which could trigger a review hearing. We reverse and remand.

## I. Personal Jurisdiction

■ We find no merit in W.E.G.'s contention that the disposition rendered at the review hearing was constitutionally and procedurally invalid because of defective notice. The record shows that W.E.G. appeared personally and by counsel at the dispositional modification hearing. There was no objection made to the service or sufficiency of notice at that hearing. Because W.E.G. raises this issue for the first time on appeal, it is not properly before this court and we will not consider it now. *In Interest of Dugan*, 334 N.W.2d 300, 306 (Iowa 1983). Even issues of constitutional magnitude will not be addressed if not presented in the trial court. *Fryer v. State*, 325 N.W.2d 400, 405 (Iowa 1982).

## II. Sufficiency of the Evidence

The juvenile in question was adjudicated to be delinquent after he acknowledged operating a motor vehicle while intoxicated.

At a subsequent dispositional hearing, the juvenile court directed that the juvenile's custody be transferred to the Department of Social Services for placement in foster care. At a later review hearing pursuant to Iowa Code section 232.54(5), the juvenile court modified the dispositional order by directing that the juvenile be removed from foster care and instead be placed at the Training School for Boys in Eldora for one year.

■ The juvenile has appealed from the dispositional order placing him at the Training School pursuant to the review hearing. He contends that the evidence did not support placement at the training school. We agree.

■ In a disposition of a child found to have committed a delinquent act, the court is to enter the least restrictive dispositional order that is appropriate under the circumstances. *See* Iowa Code § 232.52(1). A court may subsequently modify a dispositional order by imposing or substituting more restrictive conditions. *See* Iowa Code § 232.54(5). However, we believe that even though a juvenile judge is not required to implement each less restrictive dispositional alternative before reaching the most restrictive one, the selection of any one disposition over another requires rejection of others, more or less onerous, and reasons for that rejection. The record shows that this was not done.

The court asked the defense attorney, Mr. Geffe:

THE COURT: Have you done any investigation with regard to whether or not a group home placement is feasible at the present time and whether there are any slots available?

MR. GEFFE: Your honor, I personally have not done so. Mr. Wulke told me that he had not done so either, due to the fact the hearing was set so soon after placement or problems arose in the foster home.

THE COURT: It occurs to me, Mr. Geffe, that Mr. Wulke is the one who requested that the hearing be held in this time. If he considered a group home placement as a viable alternative, he should have done his homework before he requested the hearing.

Prior to the dispositional hearing, W.E.G. was admitted to the County Shelter care for a comprehensive thirty-day evaluation. In her final summary and recommendation, the director of the care facility recommended that the most effective intervention for W.E.G. would be an unstructured group home situation with emphasis on vocational skills. The evidence indicates that W.E.G. was unsuccessfully sent to Quakerdale Group Home; but that was in 1980, almost three years ago. In a behavioral assessment report where W.E.G.'s performance at the shelter care was compared

to his previous performance at Quakerdale, it was recorded:

> [W.E.G.] was able to function well in the structured environment of the Shelter. Although he protested directives and tested limits, he generally complied. The results of the rule abidance list indicate that his ability to accept limits and follow rules has improved since he left Quakerdale.

Furthermore, reports show that W.E.G. is the product of severe home deprivations, yet he has been found to be a warm, humorous, and sensitive individual. In fact, he has responded well in previous foster home placement. He is extremely well groomed and takes pride in his housekeeping responsibilities. W.E.G. has shown himself to be capable of functioning within a less restrictive environment. His testimony indicates that he realizes he has made mistakes and is willing to receive help. He is agreeable to being placed in another foster home or a group home.

■ The duty imposed on the court by the legislature to enter the least restrictive dispositional alternative is not satisfied by blaming the probation officer for failing to do his "home work." *See* Iowa Code § 232.52(1).

We reverse and remand this matter for consideration by the trial court of the appropriate restrictive dispositional alternative. We do not express an opinion what is the appropriate judgment.

REVERSED AND REMANDED.